UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARLON DIAZ and ELMER SANDOVAL,
on behalf of themselves, individually, and on
behalf of all others similarly-situated,

                                 Plaintiffs,

                 -against-

KC PLUMBING, LLC, and KOLBE
COTO-CRUZ, individually,

                                 Defendants.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19 CV 4321 (DLI) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On July 26, 2019, plaintiff Marlon Diaz ("Diaz") commenced this action against KC

Plumbing, LLC ("KC") and Kolbe Coto-Cruz ("Coto-Cruz") (together, "defendants"), seeking

damages for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

201, et seq., and the New York Labor Law ("NYLL") § 650, et seq., N.Y. Comp. Codes R. &

Regs. tit. 12 ("NYCRR") § 142-2.2, and violations of the wage notice and wage statement

requirements, pursuant to NYLL §§ 195(1) and 195(3). Plaintiff Diaz also asserted claims under

the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215. On the

same day that Diaz filed his Complaint, plaintiff Elmer Sandoval ("Sandoval") filed an opt-in

form and joined the action, with the exception of Diaz's retaliation claims. On December 4,

2019, plaintiff Sandoval was named as a plaintiff through the filing of an Amended Complaint.

(Duffy Decl.,[1] Ex. F).

---

[1] Citations to "Duffy Decl." refer to the Declaration of Caitlin Duffy, Esq. In Support of Order To Show Cause For Default Judgment and Damages, dated May 11, 2020.

Despite proper service,[2] defendants failed to file an answer or respond to the Complaint and on February 27, 2020, the Clerk of Court issued a Certificate of Default against the defendants. (Duffy Decl. ¶¶ 19, 21, Ex. J).  By Notice of Motion dated May 11, 2020, plaintiffs moved for default judgment.  The motion was referred to the undersigned on May 12, 2020.

For the reasons set forth below, it is respectfully recommended that plaintiffs be awarded damages in the amount of $207,648.06.

FACTUAL BACKGROUND

Plaintiffs allege that defendant KC is a New York limited liability corporation that operates a plumbing business based out of Jamaica, Queens.  (Am. Compl. ¶¶ 10, 16).  Defendant Coto-Cruz is alleged to be the day-to-day manager and overseer of KC, responsible for all matters relating to employees' rates and methods of pay and hours worked, with the power to hire and fire KC's employees.  (Id. ¶¶ 11, 17).  Plaintiffs allege that KC's qualifying annual business exceeded $500,000 and that its employees are engaged in interstate commerce in that they use goods, equipment, and materials, such as pipes and tools, which originate in states outside of New York. (Id. ¶ 12).

Plaintiff Diaz was employed to work as a plumber for KC from in or around October 2016 until May 5, 2018.  (Id. ¶ 18).  His duties included installing and repairing plumbing at residential and commercial job sites located in Manhattan, Long Island City, and Brooklyn.  (Id.)

_____

[2] Service of the Amended Complaint ("Am. Compl.") was effected on KC and on Coto-Cruz on December 18, 2019, by service upon a person of suitable age and discretion at 163-24 89th Avenue, Apartment 7D, Jamaica, N.Y. 11432, which is Coto-Cruz's dwelling and the address for service of process on KC, designated with the New York State Department of State, Division of Corporations. (Duffy Decl. ¶¶ 13, 14, Exs. G, H).  Copies were also mailed to that address on December 19, 2019.  (Id.) Both KC and Coto-Cruz had been previously served with the original summons and Complaint through service on the designated corporate agent and personal service at Coto-Cruz's dwelling place.  (See id. ¶¶ 8, 9, Exs. C, D).

Diaz alleges that throughout his employment, he was required to work six days per week.  (Id. ¶ 19).  He claims that from the beginning of his employment until the end of December 2017, he worked from Monday through Saturday from 7:00 a.m. until 5:00 p.m. with an uninterrupted thirty-minute break. (Id.)  As part of his duties, Diaz was required to drive the company van back to Coto-Cruz's residence in Jamaica, N.Y., typically arriving there at 6:30 p.m. (Id.)  He also claims that approximately six times per month, he was required to work a night shift until approximately 10:30 p.m., with an additional uninterrupted break of thirty minutes.  (Id.)

Thus, from the beginning of his employment in October 2016 until the end of December 2017, plaintiff Diaz claims to have worked between 66 and 70 and ½ hours per week.  (Id.)  Plaintiff claims that he was paid at his regular hourly rate of $25.00 per hour for all hours worked, including hours worked over 40 in a week, except that defendants did not pay him at all for the time spent driving the van back to Coto-Cruz's residence. (Id. ¶¶ 20, 21).

Beginning in January 2018 through the termination of his employment on May 5, 2018, Diaz claims that he was required to work six days a week, Monday through Saturday, from 7:00 a.m. to 3:30 p.m., with a thirty-minute break. (Id. ¶ 22).  He was still required to return the van to Coto-Cruz's residence, generally arriving at 5:00 p.m. (Id.)  During this period, he continued to have to work night shifts approximately six times a month. (Id.)  During this time period, Diaz was compensated at the rate of $30.00 an hour for the first 40 hours, with nothing paid for the hours in excess of 40 in a workweek.  (Id. ¶¶ 23, 24).

In or about late April or early May 2018, Diaz complained to Coto-Cruz that he was not being compensated for his overtime hours or for the time spent returning the van to Coto-Cruz's residence.  (Id. ¶ 25).  Plaintiff alleges that on May 5, 2018, mere days after registering the complaint, Diaz was terminated without explanation.  (Id. ¶ 26).

Plaintiff Sandoval was employed as a plumber from in or around October 2016 until March 4, 2018, with the same duties as those performed by Diaz.  (Id. ¶¶ 27, 28).   Sandoval claims that he was required to work six days per week, working Monday through Saturday from 7:00 a.m. to 5:00 p.m., with uninterrupted thirty-minute breaks.  (Id.)  From the beginning of his employment until the end of December 2017, Sandoval was required to work 57 hours per week. (Id. ¶ 28). In exchange for his work, Sandoval was compensated at the rate of $20.00 per hour for all hours worked, including those worked over 40 in a week.  (Id. ¶¶ 28, 29).

From January 2018 until his termination on March 4, 2018, Sandoval worked six days per week, Monday through Saturday from 7:00 a.m. to 3:30 p.m., receiving $20.00 per hour for the first 40 hours worked and nothing for any hours over 40.  (Id. ¶¶ 31-33).

Plaintiffs also allege that from the beginning of their employment until the end of December 2017, defendants paid them weekly, partly by business check and partly on a personal check from Coto-Cruz's personal account.  (Id. ¶¶ 34, 35).  From January 2018 until the end of their employment, plaintiffs were paid solely on a business check.  (Id. ¶ 35).  Plaintiffs claim that throughout their employment, they never received a wage statement that accurately reflected the amount of hours worked, their regular rate of pay, or overtime rate of pay. (Id. ¶¶ 36, 37). Moreover, plaintiffs never received any wage notice at the time of hire. (Id. ¶ 38).

In the Amended Complaint, plaintiffs assert causes of action for failing to pay overtime wages under Federal and State law (First and Second Causes of Action); failure to furnish proper wages statements in violation of the NYLL (Third Cause of Action); and failure to furnish proper wage notices in violation of the NYLL (Fourth Cause of Action).  Plaintiff Diaz brings  separate claims of retaliation under the FLSA and NYLL. (Fifth and Sixth Causes of Action).

Plaintiffs seek damages in the form of unpaid wages, liquidated damages, interest,

attorneys' fees and costs, and damages sustained by Diaz as a result of the unlawful retaliatory termination. On May 12, 2020, the matter was referred to the undersigned by the Honorable Dora L. Irizarry to prepare a Report and Recommendation as to damages.

DISCUSSION

I. <u>Default Judgment</u>

    A. <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. <u>See</u> <u>id.</u> Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. <u>See</u> Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96. Thus, in light of the "oft-stated

5

preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiffs have been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants.  See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., No. 10 CV 9250, 2012 WL 3194968, at *5 (S.D.N.Y. Aug. 7, 2012).

The burden is on the plaintiffs to establish their entitlement to recovery.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  When a default judgment is entered, the defendants are deemed to have

6

admitted all well-pleaded allegations in the complaint pertaining to liability.  See id.  For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

### B.  Entry of Default Judgment

#### 1.  Liability for Damages Alleged in Complaint

In this case, plaintiffs allege that defendants violated the FLSA, the NYLL, and NYCRR by failing to pay overtime and by failing to pay plaintiffs at all for certain hours worked in excess of 40 hours per week. (Am. Compl. ¶¶ 42-54; Duffy Decl. ¶¶ 33, 37).  In addition, plaintiffs seek statutory damages based on defendants' failure to provide proper wage notices and wage statements in violation of the Wage Theft Prevention Act.  Finally, plaintiff Diaz alleges that defendants violated anti-retaliation provisions of both the FLSA and NYLL.

##### a)  FLSA

To establish a claim under the FLSA, plaintiffs must prove the following:  (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiffs are 'employees' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found.  v. Sec. of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of
> goods for commerce, or that has employees handling, selling,

> or otherwise working on goods or materials that have been
> moved in or produced for commerce by any person; and . . .
> whose annual gross volume of sales made or business done is
> not less than $500,000.

29 U.S.C. § 203(s)(1)(A).  In their Amended Complaint, plaintiffs allege that the corporate

defendant KC has been and continues to be an employer engaged in interstate commerce within

the meaning of the FLSA.  (Compl. ¶ 12; Duffy Decl. ¶¶ 39, 40).  Plaintiffs further alleges that

the corporate defendant has had gross revenues in excess of $500,000 and used goods produced

in interstate commerce.  (Id.)  Thus, in their Amended Complaint, plaintiffs have adequately

alleged that defendant KC is a covered enterprise under the FLSA.

The FLSA defines an "employee" as "any individual employed by an employer."  29

U.S.C. § 203(e)(1); Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d at 1098.  An "employer" is

"any person acting directly or indirectly in the interest of an employer in relation to an employee

. . . ."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association,

corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. §

203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA

covers both "employees who in any workweek [are] engaged in commerce or in the production

of goods for commerce" and those persons who are "employed in an enterprise engaged in

commerce or in the production of goods for commerce. . . ."  29 U.S.C. § 206(a).

Plaintiffs allege in their Amended Complaint that they were employees engaged in

commerce and/or in the production of goods for commerce, as defined by the FLSA.  (Am.

Compl. ¶¶ 9, 44).  It follows, therefore, that for purposes of this default, plaintiffs qualify as

"employees" under the FLSA.  Plaintiffs have also adequately alleged that both defendants KC

and Coto-Cruz are "employers" for purposes of  the FLSA.  As for defendant Coto-Cruz,

plaintiffs allege that he is the day-to-day manager with the power to hire and fire employees, set

wages and schedules, and determine the employees' rate of pay.  (Am. Compl. ¶  17; Duffy Decl.

¶ 43). Additionally, the Court does not find any basis for exempting the employment relationship

at issue from any of the statutory provisions.[3]

Moreover, plaintiffs allege in their Amended Complaint that during the period of their

employment, they routinely worked over 40 hours per week for which they were not paid at the

appropriate overtime rates and, in fact, were not paid anything at all for the hours worked in

excess of 40 hours per week. (Am. Compl. ¶¶ 20-24, 28-33; Duffy Decl. ¶¶ 33, 37).

Thus, because this is a default, the Court accepts plaintiffs' uncontested allegations as

true, and respectfully recommends that plaintiffs be deemed to have sufficiently set forth the

necessary elements to state a claim under the FLSA.

b) NYLL Claims

 Plaintiffs also allege that defendants violated the NYLL.  Like the FLSA, the NYLL

requires employers to pay overtime rates calculated at one and one-half times the employees'

regular rate of pay for all hours worked in a week over 40.  See 12 N.Y.C.R.R. § 142-1.4; see,

e.g., Charvac v. M & T Proj. Mgrs. of N.Y., Inc., No. 12 CV 5637, 2015 WL 5475531, at *5

(E.D.N.Y. June 17, 2015); see also Chawdhury v. Hamza Exp. Food Corp., No. 14 CV 0150,

2015 WL 5541767, at *5 (E.D.N.Y. Aug. 21, 2015), adopted by 2015 WL 5559873 (E.D.N.Y.

Sept. 18, 2015).

To recover under the NYLL, plaintiffs must prove that they are "employees" and that the

defendants are "employers" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d

403, 407 (E.D.N.Y. 2009)  Unlike the FLSA, the NYLL does not require that a defendant

achieve a certain minimum in annual sales or business in order to be subject to the law.  See N.Y.

---

[3] See 29 U.S.C. § 213(a) setting forth the exemptions under the FLSA.

Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation. . . ."  N.Y. Lab. Law § 651(5).

In this case, plaintiffs' allegations that they were employed by defendants within the meaning of Section 190(2) of the NYLL  (Am. Compl. ¶ 51), and that defendants willfully failed to pay overtime wages (id. ¶ 15), suffice to establish a violation of the overtime wage requirements of the NYLL.

c) Plaintiffs' Other Claims

In addition to the overtime wage claims, plaintiffs raise a number of other claims under state and federal law, which when viewed within the totality of the allegations of the Amended Complaint, state claims for wage notice violations and retaliation.  A review of the allegations in the Amended Complaint demonstrate that plaintiffs have also stated claims for violations of the Wage Theft Prevention Act, NYLL §§ 195(1) and 195(3), in that they never received the notice required by Section 195(1)(a) which must be provided within ten business days of hiring (id. ¶¶ 62-64), nor did they ever receive a statement containing the information required by Section 195(3).  (Id. ¶¶ 56-58).

Finally, Diaz's allegation that he was terminated in retaliation for complaining about his wages is sufficient to state a claim of retaliatory discharge under both federal and state law.  See 29 U.S.C. § 215(a)(3) and NYLL § 215.  (Am. Compl. ¶¶ 68-75). The FLSA prohibits an employer from "discharge[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]."  29 U.S.C. § 215(a)(3).  The NYLL also prohibits employers

from discharging or retaliating against an employee because the employee "made a complaint to his or her employer. . .that the employer has engaged in conduct that the employee, reasonably and in good faith, believe violates [the NYLL]." NYLL § 215(1)(a). To establish a prima facie case of retaliation under either the FLSA or NYLL, a plaintiff must allege "participation in protected activity known to the defendant, like the filing of a FLSA lawsuit;" "an employment action disadvantaging the plaintiff;" and "a causal connection between the protected activity and the adverse employment action." Thompson v. Jennings & Hartwell Fuel Oil Corp., No. 14 CV 1857, 2015 WL 5437492, at *4 (E.D.N.Y. Aug. 27, 2015).

In this case, plaintiff Diaz alleges that in late April or early May 2018, he complained to Coto-Cruz that defendants were not paying him compensation for his overtime hours during the time that he was driving the van back to Coto-Cruz's residence. (Am. Compl. ¶ 25; Diaz Decl. ¶ 15). Shortly thereafter, he was terminated on May 5, 2018. (Am. Compl. ¶ 26; Diaz Decl. ¶¶ 15-16). These allegations are sufficient to state a prima facie claim of retaliation under both the FLSA and NYLL.

Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiffs be deemed to have adequately alleged the elements necessary to state claims under the FLSA and New York Labor Law.

C. Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, the Court finds that plaintiffs have sufficiently established liability so as to warrant entry of a default judgment for the requested damages. See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4 (West 2011).

Here, it is beyond dispute that defendants are in default.  Although it appears that defendants were properly served with the Summons and Complaint and the Amended Summons and Complaint, they failed to file an answer or otherwise respond to the pleadings.  Moreover, the failure by the corporate defendant to obtain counsel in this case constitutes a failure to defend because the corporate defendant, as a corporation, cannot proceed in federal court pro se.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).  Defendants also failed to respond to plaintiff's request that default be entered, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear – it does not even oppose this motion"), and they did not submit papers in response to plaintiffs' motion for default judgment.  Thus, plaintiffs' evidence on damages is undisputed.

Here, defendants' failure to comply with the Court's Order to appear in this action or respond to plaintiffs' papers requesting default judgment warrants the entry of a default judgment in this matter.  Additionally, the amount of money involved in this case is not significant, unlike a case in which there are potentially millions of dollars involved.  See id. (entering default but giving defendant 20 days to set aside the default because plaintiff's damages request ran well into the millions of dollars).

 Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further.  Accordingly, it is respectfully recommended that default judgment be entered against defendants KC.

D. <u>Liability of the Individual Defendant</u>

Plaintiffs bring claims against the corporate defendant KC as well as individual defendant Coto-Cruz, who is alleged to be the day-to-day manager and overseer of KC.  (Am. Compl. ¶ 17).  Individuals may be held jointly and severally liable under the NYLL if they meet the statute's definition of an employer.  <u>Rodriguez v. Almighty Cleaning, Inc.</u>, 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).  This definition extends to "any person . . . employing any individual in any occupation, industry, trade, business or service or any individual . . . acting as employer." <u>Irizarry v. Catsimatidis</u>, 722 F.3d 99, 118 (2d Cir. 2013) (citing NYLL § 190(3)).  Courts apply a four-part test examining whether the individual "(1) had the power to hire and fire the employees; (2) supervised and controlled schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records."  <u>Lauria v. Heffernan</u>, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009).

Here, plaintiffs allege that Coto-Cruz had the power to hire and fire employees, including the plaintiffs.  (Am. Compl. ¶ 17).  They further allege that the individual defendant determined the work hours of the plaintiffs and other employees.  (<u>Id.</u>)  They claim that the defendant's duties and responsibilities also included employees' rates and methods of pay.  (<u>Id.</u>)  Finally, they claim that Coto-Cruz was responsible for maintaining KC's employment records.  (<u>Id.</u>) Taken together and drawing all reasonable inferences in favor of plaintiff, the allegations demonstrate that defendant Coto-Cruz was an employer within the meaning of the NYLL and is jointly and severally liable for the judgment.

II.  Damages

    A.  Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988).  However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:  "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases),

aff'd, 873 F.2d 38 (2d Cir. 1989).  Here, because the plaintiffs have provided reasonably detailed affidavits in support of their request for damages, the Court sees no reason not to proceed.

### B.  Damages Requested by Plaintiffs

### 1)  Overtime Wages Under the FLSA and the NYLL

Plaintiffs seeks reimbursement for the overtime wages that they should have received pursuant to both the FLSA and the NYLL.  (See Am. Compl. ¶¶ 42-54).

### a) Diaz Overtime Wages

Plaintiff Diaz asserts that he was not paid overtime premiums for the hours of overtime that he worked over 40 hours per week, and that he was not paid at all for an additional nine hours each week during the initial portion of his employment.  (Diaz Decl.[4] ¶¶ 7, 10).  His claims for unpaid overtime can be broken out into two time periods.

First, from October 1, 2016 until December 31, 2017,[5] Diaz claims that he was paid at the regular rate of $25.00 per hour.  (Diaz Decl. ¶ 7).  During this 65.14-week period, he claims he worked 67.5 hours per week for half of the weeks, during which he was not paid at all for nine hours of work each week, and an additional 18.5 hours worked over 40 that were compensated but only at his regular rate of pay.  (Diaz Decl. ¶ 7; Duffy Decl. ¶¶ 53-54).  For the other half of the weeks, he worked 70 hours per week, during which he also was not paid for nine hours and there were 21 hours worked over 40 that were only compensated at his straight time rate.[6]  (Id.)

---

[4] Citations to "Diaz Decl." refer to the Declaration of Marlon Diaz, dated May 8, 2020, ECF No. 26.

[5] Since plaintiff Diaz filed this action on July 26, 2019, his entire employment period with defendants is covered by the six-year statute of limitations under the NYLL.  Garcia v. Pancho Villa's of Huntington Village, Inc., 678 F. Supp. 2d 89, 94 (E.D.N.Y. 2010).

[6] The Amended Complaint states that plaintiff Diaz's hours ranged from 66 to 70.5 hours during

Thus, under both the FLSA and NYLL, for the nine hours he received no compensation at all during the first half of the weeks, Diaz was entitled to receive his regular hourly rate of pay of $25.00 plus an additional $12.50 for each hour worked for a total of $37.50 times 9 hours or $337.50 per week. (Duffy Decl. ¶ 53). Since he was not paid for these 9 hours during the entire 65.14-week period, he is owed $21,984.75 ($337.50 per week times 65.14 weeks).

In addition, because he was not paid at the proper overtime rate for the hours over 40 that he worked, he is owed an additional $12.50 per hour for 18.75 hours per week for the first half of the period or a total of $231.25 per week. Since there were 32.57 weeks in that first half of the period, he is owed a total of $7,531.81. For the remaining weeks in the period when he worked on average 70 hours per week, he is entitled to receive $12.50 per hour for 21 hours of overtime per week or a total of $262.50 per week. Since there were 32.57 weeks when he worked 70 hours of overtime, he is entitled to receive $262.50 times 32.57 or $8,549.63. (Id.) Therefore, the total amount owed to Mr. Diaz in overtime and unpaid wages for the period 1October 1, 2016 until December 31, 2017 is $38,066.19, calculated as follows:

$37.50/hour x  9 hours x 65.14 weeks = $21,984.75

$12.50/hour x 18.5 hours x 32.57 weeks = $7,531.81

$12.50/hour x  21 hours x 32.57 weeks = $8,549.63

In January 2018, Mr. Diaz's regular rate of pay increased to $30.00 an hour, and remained at that rate until his termination on May 5, 2018. (Diaz Decl. ¶ 10). During this time, Mr. Diaz claims that he was not paid at all for any hours worked over 40. (Id.) Plaintiff seeks compensation at the rate of $45.00 per hour for every hour over 40 that he worked in a week.

---

this period. (Am. Compl. ¶ 19). Since the hours Diaz claims that he worked are within the range provided in the Amended Complaint, and defendant has not challenged these assertions, the Court relies on these numbers.

(Duffy Decl. ¶ 53).  During this 17.58-week period, he claims he worked 58.5 hours per week for half of the weeks, meaning he worked 18.5 unpaid hours over 40 each week.  (Duffy Decl. ¶ 54). For the other half of these weeks, he worked 69 hours per week,   giving him 29 hours worked over 40.  (Id.)  The amount he is owed during this time amounts to $18,788.63, broken out as follows:

$45/hour x 18.5 hours x 8.79 weeks = $7,317.68

$45/hour x 29 hours x 8.79 weeks = $11,470.95

As to the latter amount, plaintiffs arrived at a slightly lower figure of $11,464.43.  Since plaintiffs have requested the lower number, the Court recommends that Diaz receive a total of $18,782.11 ($11,464.43 plus $7,317.68) for this period.

Considering that plaintiff Diaz's claims of hours worked and pay received have not been challenged by defendants, and having considered plaintiffs' calculations, the Court respectfully recommends that plaintiff Diaz be awarded $56,848.30, representing the total amount of overtime and unpaid wages owed for the entire period of his employment.

b) Sandoval Overtime Wages

Plaintiff Sandoval seeks overtime wages in the amount of $13,525.71 for the hours worked between October 1, 2016 and March 4, 2018.  (Duffy Decl. ¶ 56).  According to plaintiff Sandoval, he was paid $20.00 an hour for his regular pay from October 1, 2016 until December 31, 2017, and thus should have been paid an additional $10.00 per hour for every hour worked over 40 in a week.  (Sandoval Decl. ¶ 7; Duffy Decl. ¶ 57).  Plaintiff Sandoval alleges that he worked 57 hours per week during this 65.14-week period, all of which were paid at his regular rate of pay.  (Sandoval Decl. ¶¶ 6-7).  In other words, he is owed an overtime premium of $10.00

per hour for 17 hours worked each week during this period.  Accordingly, he is owed

$11,073.80[7] for this period, based on a calculation of $10/hour x 17 hours x 65.14 weeks.

According to plaintiff Sandoval's affidavit, his pay remained at $20.00 an hour from

January 1, 2017 until the end of his employment on March 4, 2018.[8]  (Sandoval Decl. ¶ 10).

During this time, a period of 8.86 weeks, he worked 48 hours per week, but he was not paid for

any hours worked in excess of 40.  (Id.)  Consequently, he is owed an additional $30.00 per hour

for each of the 8 hours of overtime worked in a week or a total of $2,126.40.  This is based on a

calculation of $30/hour x 8 hours x 8.86 weeks.

Accordingly, the Court respectfully recommends that plaintiff Sandoval be awarded

$13,200.20, representing the total amount owed for his entire employment.

    2)   <u>Wage Statement Violation Penalties</u>

Under the NYLL, employers are required to give each employee a notice of their rate of

pay at the time of hiring.  N.Y. Lab. Law § 195(1)(a).  This notice is required to contain the rate

or rates of pay, whether the employee was to be paid by the hour, shift, day, or week, any

allowances claimed as part of the minimum wage, the regular pay day, the name of the employer,

the physical address of the employer's main office, and the employer's telephone number.

Plaintiffs allege that they were never provided with such a notice at the time of hire.  (Am.

Compl. ¶ 28).  Under the NYLL, a plaintiff may recover $50 per day for each workday during

---

[7] The Declaration of Caitlin Duffy calculates the amount owed for this period to be $11,400.  This appears to be based on the premise that plaintiff Sandoval worked 17.5 hours of overtime each week during this period.  (Duffy Decl. ¶ 58).  In performing its own calculations, the Court has relied on plaintiff Sandoval's sworn declaration that he worked 57 hours each week, which is consistent with the allegations contained in the Amended Complaint.  (Sandoval Decl. ¶ 7; Am. Compl. ¶ 36).

[8] The Declaration of Caitlin Duffy asserts that Sandoval was paid $30 per hour during this period, and is owed overtime pay of $45 per hour.  (Duffy Decl. ¶ 57).  Again, the Court relies on plaintiff Sandoval's own assertions and the Amended Complaint to conclude that his correct overtime rate was $30 per hour.  (Sandoval Decl. ¶ 10; Am. Compl. ¶ 37).

which the employer failed to provide this notice, not to exceed $5,000.  See Cabrera v. 1560

Chirp Corp., No. 15 CV 8194, 2017 WL 1289349, at *7 (S.D.N.Y. Mar. 6, 2017) (citing 2014

N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198(1-b)).

Also, under the NYLL, employers are  required to give each employee a pay stub listing

various specific pieces of information with each paycheck.  See N.Y. Lab. Law § 195(3).  If an

employer fails to provide an employee with a pay stub, that employee may recover $250 for each

workday for which the employer fails to provide the employee with a wage statement, not to

exceed $5,000.  Both plaintiffs Diaz and Sandoval assert that they never received a wage

statement or pay stub during the time of their employment with defendants. (Am. Compl. ¶ 27).

Plaintiff Diaz worked for defendants for 581 days, and plaintiff Sandoval worked for

them for 519 days.  (Diaz Decl. ¶¶ 2, 9; Sandoval Decl. ¶¶ 2, 8).  A penalty of $50 for each day

worked without a wage notice and $250 for each day worked without a wage statement would

therefore exceed the $5,000 statutory cap.  Accordingly, it is respectfully recommended that

plaintiffs each receive $5,000 for the violation of NYLL § 195(1) and an additional $5,000 for

the defendants' violation of NYLL §195(3).

3)  Liquidated Damages Under the NYLL

Plaintiffs also seek liquidated damages for the underpayment of their overtime wages

pursuant to the NYLL.  (Am. Compl. ¶ 46).

The FLSA and NYLL provide for liquidated damages for wage-claim violations,

calculated in an amount equal to 100% of the wage underpayments. 29 U.S.C. § 216(b); NYLL

§§ 198(1-a) and 663(1). Although plaintiffs have proven that they were not paid the proper

overtime wages under both the FLSA and the NYLL, plaintiffs "are not entitled to recover twice

for the same injury."  Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637,

2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), report and recommendation adopted as modified, No. 12 CV 5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (internal quotation marks and citations omitted); Llolla v. Karen Gardens Apartment Corp., No. 12 CV 1356, 2014 WL 1310311, at *11 (E.D.N.Y. Mar. 10, 2014), report and recommendation adopted as modified, No. 12 CV 1356, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014).  See also Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (holding that "[a]lthough plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor law, they may not recover twice"). Having established wage violations under both laws, plaintiffs "may recover under the statute which provides the greatest amount of damages." Charvac v. M & T Project Managers of New York, Inc., 2015 WL 5475531, at *4 (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007) (citation omitted)).

Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful.  N.Y. Lab. Law § 663(1) (1967).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer.  Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under both statutes, the employer bears the burden of proving good faith and reasonableness.  Under the NYLL's liquidated damages provision, "courts have not substantively distinguished the federal standard from the current state standard of good faith."  Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *7 n. 19 (S.D.N.Y. Aug. 13, 2014); Eschmann v. White Plains Crane Serv., Inc.,

No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014)).  Accordingly, the

employer's burden of proving good faith "is a difficult one, with double damages being the norm

and single damages the exception."  Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y.

2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), and awarding

100% liquidated damages under the FLSA standard).

      Since the defendants have chosen not to appear in this action and have not established

that they had a good faith basis to believe that their underpayment of wages was in compliance

with the NYLL or the FLSA, the Court respectfully recommends that plaintiff be awarded

liquidated damages in an amount equal to the amount of overtime pay owed under the NYLL.

Although plaintiffs prevailed under both state and federal law, "the law providing the greatest

recovery will govern."  (Id.) (quoting Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL

2022644, at *3 (S.D.N.Y. May 2, 2011), adopted by, 2011 WL 2038973 (S.D.N.Y. May 24,

2011)); Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *5

(S.D.N.Y. May 14, 2012).  Here, because NYLL also allows for an award of interest as

addressed below, and therefore provides the greater recovery, it is respectfully recommended that

plaintiff Diaz be awarded liquidated damages in the amount of $56,848.30, and plaintiff

Sandoval be awarded liquidated damages in the amount of $13,200.20, which is the amount of

unpaid overtime wages each plaintiff is owed.

      4)  Interest

      Plaintiffs also seek an award of interest calculated at the rate of 9% per annum on the

minimum wages and spread-of-hours wages that they were entitled to receive but were not paid.

(Duffy Decl. ¶ 71).  Under the NYLL, pplaintiffs are entitled to interest on all wages awarded,

calculated at a rate of 9% per annum.  See N.Y.C.P.L.R. § 5004.  Pre-judgment interest is not

available under the FLSA because the federal statute does not allow an employee to recover

"prejudgment interest on any portion of their recovery for which they have been awarded federal

liquidated damages," since liquidated damages under the FLSA "are considered compensatory in

nature and thus serve as a form of pre-judgment interest."  Yuquilema v. Manhattan's Hero

Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and

quotation marks omitted), report and recommendation adopted by 2014 WL 5039428 (S.D.N.Y.

Sept. 30, 2014); Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d at 261.

        However, the Second Circuit has held that, as liquidated damages and pre-judgment

interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both

for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d

Cir. 1999).[9]  In this case, since the Court did not award plaintiffs damages on their FLSA

claims,[10] there is no impediment to awarding liquidated damages and interest on plaintiffs'

NYLL claims.

        Accordingly, plaintiffs are entitled to pre-judgment interest on their unpaid overtime

wages.  Where, as here, violations of the NYLL occur over an extended period of time, courts

calculate prejudgment interest from an intermediate date.  See, e.g., Wicaksono v. XYV 48

Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011).  Thus, this Court will

compute interest from the date halfway between when each plaintiff began and ceased working

---

[9] However, where plaintiffs receive damages under both the FLSA and the NYLL, prejudgment interest accrues on any amounts for which liquidated damages are not awarded under the FLSA (see id.); pre-judgment interest may not be awarded under the NYLL in addition to liquidated damages that are awarded for violations of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011); Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d at 92-93; see also Hengjin Sun v. China, 2016 WL 1587242, at *5-6 (citing cases and holding that plaintiffs are entitled to pre-judgment interest on their non-overlapping NYLL wage claims at a simple rate of 9% per year).

[10] Although the plaintiffs established that defendants violated both the FLSA and NYLL, the Court only recommends an award of damages and liquidated damages under the NYLL.

for defendants.  See Cortez v. 8612 Best Coffee Shop, Inc., No. 13 CV 3095, 2015 WL 10709830, at *8 (E.D.N.Y. Aug. 14, 2015).  For Mr. Diaz, that date is July 18, 2017, the midpoint between October 1, 2016 and May 5, 2018.  (Duffy Decl. ¶ 72).  For Mr. Sandoval, the midpoint date is June 17, 2017.  (Id. ¶ 74).  Plaintiffs seek prejudgment interest for Mr. Diaz calculated at the rate of $14.02 per day and for Mr. Sandoval at the rate of $3.34 per day.  (Id. ¶¶ 72, 74).  According to the Court's calculations, the daily rate owed to Mr. Diaz is correct.  However, the Court has computed a different daily rate for Mr. Sandoval.  Plaintiff Sandoval is entitled to a prejudgment interest of $3.25 per day, based on a calculation of 9% of $13,200.20, divided by 365.  It is respectfully recommended that plaintiff Diaz be awarded $14,409.87[11] in interest, calculated from July 18, 2017 to  May 11, 2020, the date the motion was filed, and that plaintiff Sandoval be awarded $3,446.87 in interest, calculated from June 17, 2017 to May 11, 2020.  It is further respectfully recommended that additional interest be awarded as calculated by the Clerk of Court, from May 11, 2020 to the date final judgment is entered.

Plaintiffs also seek an award of post-judgment interest.  Interest under 28 U.S.C. § 1961(a) is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  28 U.S.C. § 1961(a).  The Second Circuit has held that post-judgment interest is mandatory on all awards in civil cases as of the date judgment is entered.  Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996).  Accordingly, it is respectfully recommended that plaintiffs be awarded post-judgment interest at the statutory rate, as calculated by the Clerk of Court.

---

[11] Proceeding from the same daily rate and number of days, the Court calculates that Mr. Diaz is owed $14,412.56.  Because plaintiff requests a lower amount, the Court respectfully recommends that the plaintiff be awarded $14,409.87. (Duffy Decl. ¶ 73).

5)  Retaliation

A plaintiff who demonstrates retaliatory discharge under the FLSA "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [the provision], including without limitation . . .the payment of wages lost and an additional equal amount of liquidated damages." 29 U.S.C. § 216(b). A plaintiff who demonstrates retaliation under the NYLL is entitled to "lost compensation," ordinarily in the form of back pay from the date of termination until the date of judgment. See Belizaire v. RAF Investigative and Sec. Services Ltd., 61 F. Supp. 3d 336, 362-63 (S.D.N.Y. 2014). In addition, some courts have held that emotional distress damages are available under the FLSA and NYLL, see, e.g., Greathouse v. JHA Sec. Inc., No. 11 CV 7845, 2015 WL 7142850, at *3 (S.D.N.Y. Nov. 13, 2015), adopted by 2016 WL 4523855, while other courts have held that punitive damages may be available on a case by case basis. Blackwell v. Actor's Playhouse, No. 14 CV 0603, 2016 WL 11483834, at *7 (S.D.N.Y. Apr. 4, 2016).

Here, plaintiff Diaz seeks an award of $5,000 for his emotional distress suffered as a result of defendants' retaliation, plus an additional $5,000 in punitive damages. (Duffy Decl. ¶ 79). Similar awards have been made in other cases. See, e.g. Burns v. Nurnberger Corp., No. 16 CV 6251, 2018 WL 5927575, at *10-11 (E.D.N.Y. Sept. 17, 2018), adopted by 2018 WL 5928106 (awarding $5,000 in emotional distress damages and $5,000 in punitive damages for retaliation and plaintiff's distress while unemployed); Blackwell, 2016 WL 1143834 at *8 (same where plaintiff demonstrated anxiety, depression, impairment of relationships and loss of sleep as a result of the termination).

Plaintiff Diaz claims that he suffered emotional distress as a result of being terminated for his complaints about unpaid overtime. (Diaz Decl. ¶ 17). He states that he suffered from

insomnia, anxiety, and depression during the three ensuing months that he was unemployed,

because he is the sole wage earner for his family and he was unable to provide for them

financially.  (Id.)  Diaz does not provide any medical or mental health records in support of his

claim.  His assertions are consistent with what courts have deemed to be "garden variety"

emotional distress claims, where evidence is limited to the testimony of plaintiff, without

evidence as to duration, severity, or consequences of the condition.  See Greathouse v. JHS Sec.

Inc., 2015 WL 7142850, at *4 (quoting Fowler v. New York Transit Authority, No. 96 Civ.

6796, 2001 WL 83228, at *13 (S.D.N.Y. Jan. 31, 2001)).  The requested award of $5,000 is on

the low end of the spectrum of what courts have awarded for such claims.  Id.; Drice v. My

Merchant Services, LLC, No. 15 CV 0395, 2016 WL 1266866 (E.D.N.Y. March 4, 2016)

(observing that "[f]or garden variety emotional distress claims, courts have awarded damages

ranging from $5,000 to $35,000").

   Accordingly, the Court respectfully recommends an award of $ 5,000 in emotional

distress damages for plaintiff Diaz's retaliation claims.

   Awards of punitive damages for retaliatory discharge similarly vary according to the

conduct of the defendant.  See, e.g., Perez v. Jasper Trading, Inc., No. 05 CV 1725, 2007 WL

4441062, at *8-10 (E.D.N.Y. Dec. 17, 2007) (awarding punitive damages to each plaintiff, but a

higher amount to plaintiff who experienced "more wanton" retaliation).  As with emotional

distress damages, $5,000 appears to be at the lower boundary of the award spectrum.  See

Blackwell v. Actor's Playhouse, 2016 WL 1143834, at *8 (finding $5,000 to be an adequate

award where plaintiff established only that defendants "failed to correct their prior violations,

and instead retaliated against him after he lodged a complaint").  Plaintiff Diaz's claims

regarding his employer's conduct support an inference that he was terminated in retaliation for

asserting his rights, but there does not seem to be any evidence of additional egregious behavior. Cf. Perez v. Jasper Trading, Inc., 2007 WL 4441062, at *10 (awarding $15,000 to plaintiff who was threatened with bodily harm and defamed in her community); Greathouse v. JHA Sec. Inc., 2015 WL 7142850, at *9 (awarding $10,000 in punitive damages where employer brandished a gun toward the plaintiff).  Given the lack of aggravating conduct on the part of defendants, the Court finds that punitive damages of $5,000 are appropriate.

In sum, the court respectfully recommends an award of $10,000 in damages for plaintiff Diaz's retaliation claims.

### III.   Attorneys' Fees and Costs

Plaintiffs also seek an award of $18,682.00 in attorneys' fees and $1,012.32 in costs incurred in connection with this action, pursuant to the FLSA, 29 U.S.C. § 216(b), and NYLL §§ 198(4), 663(1)).  (Duffy Decl. ¶ 80).

### A.   Prevailing Party

The FLSA is a fee shifting statute and the Court "must" award a reasonable attorney's fee to a prevailing party in an FLSA action.  Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 216(b) (providing that the court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis supplied)); see, e.g., Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013).  Similarly, the NYLL

provides for an award of reasonable attorney's fees when the employee prevails on a wage claim.

N.Y. Lab. Law § 663(1).  Section 663 provides that successful employees are entitled to:

> [R]ecover in a civil action the amount of any such
> underpayments, together with costs all reasonable
> attorney's fees, prejudgment interest as required
> under the civil practice law and rules . . . .

Id.  Plaintiffs are prevailing parties under the FLSA and NYLL "'if they succeed on any

significant issue in litigation which achieves some of the benefit the parties sought in bringing

suit.'"  Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v.

Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990)

(holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately

obtained is not identical to the relief demanded in the complaint").

Here, because defendants have defaulted, plaintiffs are prevailing parties and therefore

should receive an award of reasonable attorneys' fees and costs.


B.  Calculation of Reasonable Attorneys' Fees

1)  Legal Standard

"The district court retains discretion to determine . . . what constitutes a reasonable fee."

Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v.

Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a

reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively

reasonable fee."  Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350,

at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report

and recommendation adopted, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v.

Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the

lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. March 19, 2013), report & recommendation adopted by 2013 WL 1622713 (April 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. March 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'"  Millea v. Metro-North R.R. Co., 658 F.3d at 167 (quoting Perdue v. Kenny A., 130 S. Ct. at 1673).  Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  Id. (quoting Perdue v. Kenny A., 130 S. Ct. at 1673); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2.  In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors."  Id.  As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using

the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[12]  2012 WL 676350, at *5, n.6.

The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1943 (1983).  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'"  Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when

---

[12] The Johnson factors are as follows:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

2) <u>Analysis</u>

In this case, plaintiffs are represented by the firm of Borrelli & Associates, P.L.L.C. ("the Firm"), with offices in Garden City and in Manhattan (Duffy Decl. ¶ 94).  In accordance with <u>New York State Association for Retarded Children, Inc. v. Carey</u>, the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney and a description of services performed.  711 F.2d 1136, 1148 (2d Cir. 1983).  (<u>See</u> Duffy Decl., Ex. K).  Plaintiffs seek attorneys' fees in the amount of $18,682.00, representing services performed by Michael J. Borrelli, the founding and managing partner of the Firm with over 19 years of practice in state and federal court litigation, with a primary focus on labor and employment law cases.  (<u>Id.</u> ¶ 90).  Mr. Borrelli routinely charges $500 an hour for his services, but is requesting reimbursement in this case at the rate of $400 per hour. (<u>Id.</u> ¶¶ 98, 99).

Alexander Coleman is another partner at the Firm, who performed services in connection with this matter.  He has practiced at the Firm since January 2010, becoming a partner in December 2015.  (<u>Id.</u> ¶ 103).  His current hourly rate, which is paid by clients of the Firm, is $400 an hour, but he is requesting an hourly rate of $350 per hour for this case.  (<u>Id.</u>  104, 105).

Caitlin Duffy, senior associate at the Firm, has been practicing law since 2007 and joined the Firm in April 2017.  (<u>Id.</u>  ¶ 107).  She has handled this case as lead attorney from its inception in July 2019 and is seeking an hourly rate of $295, which is lower than her typical hourly rate of $300 per hour.  (<u>Id.</u> ¶¶ 108-110).

Two junior associates also worked on matter:  Danielle Mietus, who was admitted to practice in April 2017, and David R. Contino, who was admitted to practice in 2017.  (Id. ¶¶ 111-112, 114-115). They are both requesting $200 per hour for the work performed in connection with this case.  Finally, plaintiffs are requesting reimbursement of $125 per hour for a bilingual paralegal who worked on this matter. (Id. ¶¶ 117, 118).

Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rates of $400 per hour for founding partner Borrelli and $350 an hour for Mr. Coleman, also a partner, are within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District. See, e.g., Sajvin v. Singh Farm Corp., No. 17 CV 4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (awarding $500 per hour to partner in FLSA case, though noting that "$450 has been the upper limit in this District since at least 2013"); Gutman v. Klein, No. 03 CV 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (stating that rates between $300 and $400 for partners are within the reasonable range in the Eastern District of New York).  Similarly, the rates requested for Ms. Duffy and the junior associates are also well within the range of rates typically awarded for these types of cases within the Eastern District of New York.  See, e.g., Guinea v. Garrido Food Corp., No. CV , 2020 WL 136643 (E.D.N.Y. Jan. 13, 2020) (finding that associate rate of $250-$300 per hour is "reasonable and consistent with rates allowed in this district"); Burns v. Nurnberger Corp., 2018 WL 5927575, at *12 (awarding $215 to associate who had been practicing for 3 years).

Finally, the requested rate of $125 is somewhat higher than typical for paralegals working on FLSA default cases in this district.  See, e.g., Cabrera v. Canela, No. 14 CV 4874, 2019 WL 5693739, at * (E.D.N.Y. June 20, 2019) (awarding $100 for paralegals in FLSA default case);

Hernandez v. Delta Deli Market, No. 18 CV 0375, 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (same).  However, the record reflects that plaintiffs speak Spanish, and that the paralegal here, Luiggi Tapia, also speaks Spanish and assisted in translation during attorney-client meetings, presumably saving the cost of a translator.  (Duffy Decl. ¶¶ 112, 117; Ex. K at 2, 3, 16).  Accordingly, the Court finds that the claimed hourly rate for Mr. Tapia is reasonable under the circumstances.  See Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *5 (E.D.N.Y. Jan. 25, 2018) (approving $125 hourly rate for paralegals in light of relevant language skills).

Turning to the number of hours billed, the total number of hours billed in this matter was 106 hours.  (Duffy Decl. ¶ 88).  Courts in this circuit have approved fees where the attorneys billed similar numbers of hours in FLSA and NYLL default cases.  See Baltierra v. Advantage Pest Control Co., No. 14 CV 5917, 2015 WL 5474093, at *13 (S.D.N.Y. Sept. 18, 2015) (approving fees of $22,075 for 108.2 hours billed in an FLSA and NYLL default case with multiple plaintiffs).

In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours."  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for

relatively straightforward legal tasks was excessive and led to duplication of work" and

deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, see, e.g.,

In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity

in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037,

1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of

work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v.

Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with

insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24

F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ.,

795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of

specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827

(S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of

work performed).

Having reviewed the billing records submitted by counsel and being familiar with the

proceedings to date, the Court finds that the number of hours charged in this matter is reasonable,

given the amount of work performed.  Accordingly, based on the hourly rates set forth above,

and the hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded

$18,682 in attorneys' fees.


C.  Reasonable Costs

Plaintiffs also request $1,012.32 in costs for filing fees ($400) and service of process

fees:  (Duffy Decl., Ex. M).  According to the provided billing statement, these costs were

33

incurred for Westlaw usage charges, service of process on the defendants, copying expenses, and filing fees.  (Id.)

 Based on a review of the record, the Court finds these costs to be reasonable, and respectfully recommends that plaintiffs be awarded $1,012.32 in costs.  See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service of process, legal research, and postage); see also Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (citing Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987) (explaining that "[i]dentifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate").  In sum, the Court recommends that plaintiffs be awarded $18,682.00 in attorneys' fees, plus an additional $1,012.32 in costs, totaling $19,694.32.


<u>CONCLUSION</u>

 The Court respectfully recommends that plaintiffs' motion for entry of a default judgment be granted, and that plaintiffs be awarded $207,648.06 in damages as follows:

 (1) $56,848.30 to plaintiff Diaz and $13,200.20 to plaintiff Sandoval for unpaid overtime wages;

 (2) $10,000 to plaintiff Diaz and $10,000 to plaintiff Sandoval in penalties for wage notice and wage statement violations;

 (3) $56,848.30 to plaintiff Diaz and $13,200.20 to plaintiff Sandoval in liquidated damages;

(4) $14,409.87 to plaintiff Diaz and $3,446.87 to plaintiff Sandoval in prejudgment

interest, plus interest accrued between the filing of the motion and final entry of judgment;

(5) $10,000 in damages owed to plaintiff Diaz for defendants' actions in retaliation for

his complaints about his wages; and

(6) $ 19,694.32 in attorneys' fees and costs.

Additionally, the Court respectfully recommends that plaintiffs are entitled to post-judgment

interest on the award.  The Court further recommends that defendants be held jointly and

severally liable for the plaintiffs' damages.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

Plaintiff shall serve a copy of this Report and Recommendation on the defendants and file

proof of such service on the record within two weeks of the date of this Report.


**SO ORDERED.**

Dated: Brooklyn, New York
       March 1, 2021

                                /s/ Cheryl L. Pollak
                              Cheryl L. Pollak
                              Chief United States Magistrate Judge
                              Eastern District of New York